UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C. CHAGAS,<br><br>    Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, et al.,<br><br>    Defendants. | Case No. 22-cv-08865-AMO<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT, AND REMANDING CASE FOR FURTHER PROCEEDINGS**<br><br>Re: Dkt. Nos. 18, 24 |

Plaintiff C. Chagas[1] moves for summary judgment, seeking reversal of the final decision of the Commissioner of Social Security ("Commissioner")[2] denying his application for Child's Benefits under Title II of the Social Security Act. The Commissioner opposes the motion and cross-moves for summary judgment affirming the denial. Having considered the parties' papers the administrative record, and the relevant legal authority, the Court **GRANTS** Chagas' motion for summary judgment, **DENIES** the Commissioner's cross-motion for summary judgment, and **REMANDS** this matter for further proceedings.

**I.     BACKGROUND**

    **A.     Chagas' Application for Social Security Disability Insurance Benefits**

On December 11, 2020, Chagas applied for child's benefits when his mother began to

---

[1] The Court partially redacts Chagas' name to mitigate privacy concerns. *See Heather L. v. Saul*, 2020 WL 3504468, at *1 n.1 (N.D. Cal. June 29, 2020) (citing Fed. R. Civ. P. 5.2(c)(2)(B)).

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley, Commissioner of Social Security, is substituted as defendant in place of Kilolo Kijakazi.

draw her retirement benefits. Administrative Record ("AR") (ECF 17) 223.[3] Chagas was born on November 21, 1982, and alleges disability prior to November 20, 2004, the day before he turned 22.[4] AR 28-29. On October 4, 2011, at 29 years old, Chagas was found to meet the disability standard for bipolar disorder as of that date. AR 82-97. He was approved for Supplemental Security Income benefits, which he continues to receive. *Id.*

### B. Medical Evidence

In his application for social security benefits, Chagas submitted medical records detailing his treatment for bipolar disorder. Chagas reported the onset or awareness of his symptoms at 15 years old, when he suffered from abuse from his father, and was treated for depression. AR 310, 321. Doctors' notes indicate that in 2003 or 2004, Chagas was prescribed Depakote, a drug used to treat bipolar disorder. AR 311, 336.[5] Between at least 2005 and 2007, Chagas continued to receive prescriptions for Depakote. AR 321, 478.

In April of 2007, Chagas called his psychiatrist, Dr. Richard Russell, reporting that he was having "scattering in his thinking, [his] meds were not helping, and that he has been misdiagnosed." AR 382. Dr. Russell reported that Chagas had not been in since May 2005 and had a "past history of settling down with [a] low dose of Depakote and some Restoril for sleep." AR 382. Chagas then stopped taking Depakote due to weight gain. AR 312. From 2007 to 2010, Chagas had multiple visits with Dr. Russell, who prescribed him with Abilify and Lamotrigine for his bipolar disorder. AR 373-82. Due to medication side effects, treating psychiatrists decreased his dosage of Abilify in 2010 and 2011. AR 338-39, 343.

Dr. Michael Allan Levy treated Chagas in October of 2011 and indicated that Chagas' mood was "reasonably stable" on Lamictal (Lamotrigine), but he was still "unable to focus" and unlikely to be able to join the work force. AR 334. In 2018, Chagas sought treatment with Dr.

---

[3] Pincites refer to the Bates number on the bottom right of the page.

[4] Pursuant to 20 C.F.R. § 404.350, a person is entitled to child's benefits if he is over 18 years old and has a disability that began before turning 22 years old.

[5] The doctor's note indicates "[i]n 2004 he was treated with temazepam and Depakote and Abilify was first started in May 2007 . . . [.]" AR 336.

Emily Stein, reporting that he had stopped taking Lamotrigine when his insurance ended, and that he "just got insurance again." AR 325. Chagas had not taken Lamotrigine for several years due to losing insurance and suffering financial stress. AR 325, 330, 336-37.

Medical records from 2010 (AR 343), 2018 (AR 325-26), 2019 (AR 314-15), and 2020 (AR 312) indicate "chronic concerns about focus and memory." Medical notes indicated that Chagas reported that Prozac "made me very dangerous to myself and others," and while taking Paxil, he was "losing his mind, couldn't sleep, not eating, forgetful, could not attend school." AR 315; *see also* AR 500, 502. Chagas suffered from depression, reported thoughts of suicide and feeling worthless, and periods of thinking "a million times a minute." AR 325-26. Medical treatment notes indicate that he was "mildly manic due to stress and was not able to become stable on medicine. AR 330; *see* AR 325-28 (Dr. Stein reported that Chagas suffers from chronic depression, generalized anxiety disorder, mania, obsessive-compulsive disorder, post-traumatic stress disorder, and chronic poor focus); *see also* AR 312, 314, 320-21, 343. Dr. Stein also reported that Chagas was unable to complete college due to his bipolar disorder, told her that he "does not feel normal, feels his emotions are extreme," and was "stressed by his erratic sleep schedule and anxiety." AR 498-99, 502.

### C. The Administrative Hearing

Chagas appeared with his attorney at a hearing before Administrative Law Judge (ALJ) Debra Underwood on January 25, 2022. AR 34-62. The ALJ heard testimony from medical expert Dr. George Bell. AR 44.

Dr. Bell testified that Chagas suffers from bipolar disorder. AR 46. He explained that in 2007, at age 24, Chagas was prescribed Depakote and Abilify, which are used, respectively, as a mood stabilizer in bipolar disorder and therapy for depression and psychotic symptoms. AR 55. In reviewing records showing that Depakote was prescribed on May 18, 2005, Dr. Bell testified that "it would indicate to me that at least at that point, . . . at least [his] bipolar symptoms more likely the manic part—was manifested back in 2005." AR 58. Dr. Bell testified that Chagas has mild impairment in social functioning, marked impairment in concentration and attention, and moderate impairment in adaptation or managing one's self. AR 49-50. He testified that the

3

medical records show that despite trying various antidepressants, mood stabilizers, and anti-anxiety medication, Chagas still has active symptoms. AR 52. Dr. Bell testified that even though there were no records as early as November 20, 2004, it was reasonable to infer the severity of his condition in 2004, "particularly in light of the claim that he started having difficulty with depression in his teens." AR 59. He testified that it was his opinion that Chagas would meet the definition of bipolar disorder as of November 20, 2004. AR 59.

### D.     The ALJ's Decision

After excusing Dr. Bell, the ALJ stated that she would hold a supplemental hearing if she could not make a fully favorable decision without witness testimony. AR 59-62. On April 5, 2022, the ALJ issued a fully favorable decision on Chagas' application for child disability benefits. AR 28-31. Accordingly, Mr. Chagas and his mother never testified. The ALJ made the following findings of fact and conclusions of law:

1. Born on November 21, 1982, the claimant had not attained age 22 as of November 19, 2004, the date disability is established (20 CFR 404.102 and 404.350(a)(5)).
2. The claimant has not engaged in substantial gainful activity since November 19, 2004, the amended alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).
3. The claimant has the following severe impairment: bipolar disorder I (20 CFR 404.1520(c)).
4. The severity of the claimant's impairment meets the criteria of section 12.04 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 404.1525).

AR 29. The ALJ concluded that Chagas' impairment meets the "paragraph A" criteria of Section 12.04 of 20 CFR 404.1520(d) and 404.1525 because he had "feelings of worthlessness, sleep disturbance, appetite disturbance, suicidal ideation, sadness/depressed mood, decreased need for sleep, racing thoughts, and increased energy." AR. 29. Chagas met the "paragraph C" criteria because the evidence showed the disorder to be "serious and persistent." AR 29. The ALJ reasoned that there was a medically documented history of bipolar disorder for at least two years, "evidence of medical treatment, mental therapy, psychosocial support, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of the mental disorder," and

that Chagas had only "a minimal capacity to adapt to changes in [his] environment." AR 30.

The ALJ reached this determination based on Dr. Bell's testimony confirming Chagas' mental illness, describing his symptoms, and noting the documented evidence of "pressured speech, flight of ideas, distractibility, and self-reported psychomotor agitation." AR. 30. The ALJ reasoned that medical treatment notes support Dr. Bell's inference that Chagas was impaired as of November 2004. AR 30. The ALJ found that Dr. Bell's inference was consistent with Chagas' long-standing treating psychiatrist Dr. Michael Levy's 2011 statement that it was difficult to stabilize Chagas on his medications for over a decade and that it was unlikely that he would be able to join the work force. AR 30. The ALJ found Dr. Bell and Dr. Levy's opinions "consistent with the mental treatment notes." AR 30.

### E. The Appeals Council's Review and Decision

The Appeals Council (AC) reviewed the ALJ's decision on its own motion and on October 20, 2022, it reversed the ALJ's decision. AR 4-10. The AC found that the ALJ improperly evaluated the medical opinions and prior administrative findings. AR 7. The AC also found that the ALJ did not evaluate the severity of Chagas' impairment under the special technique described in 20 CFR § 404.1520a. AR 5. In re-evaluating the evidence, the AC found that Chagas had bipolar disorder prior to November 20, 2004, but that the impairment was not severe as it was not reasonable to infer the severity of the disorder from records dated two years later. AR 5-8. The AC found that Chagas' "mental impairments were not so severe as to require mental health treatment for an extended period" because an April 2007 mental health visit indicated that Chagas reported having not been seen for treatment in two years. AR 9. Therefore, the AC found that further testimony from Chagas and his mother would not be useful in assessing severity. AR 9. The AC concluded that Chagas was not disabled at any time prior to November 20, 2004, the day he turned 22 years old, and Chagas was not entitled to child's insurance benefits. AR 9-10. The AC also noted that Chagas has previously applied for disability benefits and been found not disabled prior to October 4, 2011. AR 8. The AC found that there had been no material changes in circumstances since that decision. AR 8. The AC's decision became the final decision. AR 1.

**F.     This Action**

On December 14, 2022, Chagas commenced this action against the Commissioner, seeking judicial review of the denial of his application for Social Security child disability benefits pursuant to 42 U.S.C. § 405(g).  ECF 1.  On April 11, 2023, Chagas filed his motion for summary judgment to reverse the Commissioner's final decision denying benefits, seeking a remand of this action for an immediate award of benefits.  ECF 18.  On June 29, 2023, the Commissioner filed a combined opposition and cross-motion seeking summary judgment affirming the denial of Chagas' application.  ECF 24.  On July 16, 2023, Chagas filed his combined opposition and reply.  ECF 28.

## II.    LEGAL STANDARD

**A.     Standard of Review**

The Social Security Act authorizes judicial review of final Social Security Agency decisions based on "the pleadings and transcript of the record."  42 U.S.C. § 405(g).  A federal court's review of Social Security determinations is "quite limited."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).  A court may set aside the Commissioner's denial of benefits if it is "not supported by substantial evidence or is based on legal error."  *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024) (citation omitted).  "Substantial evidence" means evidence in the record that "a reasonable mind might accept as adequate to support a conclusion" regarding disability status.  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted).  It is more than a mere scintilla, but less than a preponderance.  *Id.*; *see Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citations omitted).

In deciding whether substantial evidence supports the AC's findings, the court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  *Rounds v. Comm'r, Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015) (citation omitted); *see Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).  If the evidence is susceptible to more than one rational interpretation, the Commissioner's findings must be upheld if supported by reasonable inferences drawn from the record.  *Rounds*, 807 F.3d at 1002.

6

A district court may enter a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing. 42 U.S.C. § 405(g). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded" for further proceedings. *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). If, however, "the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

### B. Child Disability Insurance Benefits

To be eligible for disabled child's insurance benefits, a claimant must "at the time [his] application was filed," be "under a disability . . . which began before he attained the age of 22." 42 U.S.C. § 402(d)(1)(B); *see* 20 C.F.R. § 404.350(a)(5). "The claimant must be disabled *continuously and without interruption* beginning before [his] twenty-second birthday until the time [he] applied for child's disability insurance benefits." *Smolen v. Chater*, 80 F.3d 1273, 1280 (9th Cir. 1996) (collecting concurring circuit cases) (emphasis in original).

### C. The Five-Step Disability Inquiry

Subject to other provisions not relevant here, a claimant is "disabled" under the Social Security Act (SSA) if two requirements are met. *See* 42 U.S.C. § 1382c(a)(3). First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Id.* at § 1382c(a)(3)(A). Second, the impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . [.]" *Id.* § 1382c(a)(3)(B).

The SSA regulations set forth a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4). The relevant inquiry at each step proceeds as follows:

1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is

1      not disabled within the meaning of the Social Security Act. If not, proceed to step two.
2      *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

3   2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant
4      is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

5   3. Does the impairment "meet or equal" one of a list of specific impairments described in 20
6      C.F.R. Part 220, Appendix 1? If so, then the claimant is disabled. If not, proceed to step
7      four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

8   4. Is the claimant able to do any work that he or she has done in the past? If so, then the
9      claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e),
10     416.920(e).

11  5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not,
12     then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At every step of the inquiry, the Commissioner has an affirmative duty to assist the claimant in developing the record. *Id.* at 1098 n.3.

**III.   DISCUSSION**

Chagas seeks summary judgment in his favor, primarily arguing that: (1) the AC erred in finding that Chagas did not rebut the presumption of continuing non-disability; (2) the AC improperly rejected Dr. Bell's and Dr. Levy's medical opinions; and (3) the AC erred in finding no severe impairment. ECF 18 at 16-24. Chagas argues that the AC's errors are grounds for reversal of its denial of benefits and entitle him to a remand for an immediate award of benefits. *Id.* at 26-27. The Commissioner cross-moves for summary judgment, arguing that the AC reasonably found that Chagas did not have a severe impairment and properly considered the medical opinions. ECF 24 at 8-18. The Commissioner additionally argues that if the Court finds reversible error, remand for further proceedings, rather than for an immediate award of benefits, is the proper remedy. *Id.* at 18-20.

Because it could be dispositive, the Court begins by analyzing the presumption of non-

1  continuing disability.

## A. Presumption of Continuing Non-Disability

The AC found that the January 23, 2012 ALJ decision that Chagas did not meet the disability standard prior to October 4, 2011 precludes a finding of disability here. AR 8. The AC is wrong. Chagas submitted new and material evidence regarding a different type of claim and was unrepresented at the earlier disability hearing, rebutting the presumption of continuing non-disability.

The presumption of continuing non-disability is a doctrine developed by the Ninth Circuit and adopted by the SSA that applies the principle of res judicata to an ALJ's determination that a claimant is not disabled. *See Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988). "[A] final decision by an ALJ that a claimant is not disabled gives rise to a presumption that the claimant continues to be not disabled after the period adjudicated . . . [.]" Acquiescence Ruling 97-4(9). This presumption then applies when adjudicating a subsequent disability claim. *See id.*

The presumption is rebuttable. "A claimant may rebut the presumption by showing a 'changed circumstance' affecting the issue of disability with respect to the unadjudicated period." *Id.* A changed circumstance includes a change in the claimant's age category, an increase in the severity of the claimant's impairment, or a new allegation regarding the existence of an impairment not previously considered. *See id.*; *see also Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985) (requiring "changed circumstances" to overcome a presumption of continuing non-disability). "[W]here the claimant rebuts the presumption by proving a 'changed circumstance,' principles of res judicata require that certain findings contained in the final decision by the ALJ on the prior claim be given some res judicata consideration in determining whether the claimant is disabled." Acquiescence Ruling 97-4(9). If the prior ALJ decision includes "findings of the claimant's residual functional capacity, education, and work experience, [the current ALJ] may not make different findings in adjudicating the subsequent disability claim unless there is new and material evidence relating to the claimant's residual functional capacity, education, or work experience." *Id.*

Chagas contends that he presented new and material evidence because he seeks different

9

benefits – child's benefits as opposed to disability benefits based on his work record – and accordingly submitted 246 pages of Kaiser medical records. ECF 18 at 24.[6] The AC did not explain why these records do not rebut the presumption of disability. Indeed, "the Commissioner may not apply res judicata where the claimant raises a new issue . . . [.]" *Lester v. Chater*, 81 F.3d 821, 827-28 (9th Cir. 1995) (citation omitted); *see Gregory v. Bowen*, 844 F.2d 664, 666 (9th Cir. 1988). Moreover, res judicata is not to be applied "where the claimant was unrepresented by counsel at the time of the prior claim." *Id.* Chagas raises a new claim for child's disability and was unrepresented at the prior hearing. Thus, it was legal error for the AC to apply the continued presumption of non-disability.

**B.     The AC Erred in Rejecting the Medical Opinions of Certain Doctors**

Chagas also challenges the AC's findings regarding the persuasiveness of the medical opinions in the record. Specifically, Chagas challenges the AC's persuasiveness determinations regarding two doctors: (1) non-examining testifying medical expert Dr. Bell and (2) treating psychiatrist Dr. Levy. ECF 18 at 20-22. "Although the [2017] regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ [and AC] must still 'articulate how [they] considered the medical opinions' and 'how persuasive [they] find all of the medical opinions.' " *V.W. v. Comm'r of Soc. Sec.*, 2020 WL 1505716, at *14 (N.D. Cal. Mar. 30, 2020) (internal quotations and citation omitted).[7] "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Rather, "[t]he agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these

---

[6] The Commissioner fails to respond to this argument in opposing and cross-moving for summary judgment. *See* ECF 24.

[7] "For claims filed before March 27, 2017, [t]he medical opinion of a claimant's treating physician [wa]s given controlling weight so long as it [wa]s well-supported by medically acceptable clinical and laboratory diagnostic techniques and [wa]s not inconsistent with the other substantial evidence in [the claimant's] case record." *V.W.*, 2020 WL 1505716, at *13 (internal quotations and citations omitted).

10

findings." *Id.* (quoting 20 C.F.R. §§ 404.1520c(b), (b)(2)). "Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant . . . objective medical evidence." *Id.* at 791-92 (internal quotations and citation omitted); *see also* 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be"). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.' " *Woods*, 32 F.4th at 792; *see also* 20 C.F.R. §§ 404.1520c(c)(2) ("The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be"). When rejecting a medical opinion as unsupported or inconsistent, the AC is required to "provid[e] an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792. The Court addresses the challenged findings about Dr. Bell and Dr. Levy's medical opinions.

### 1. Dr. Bell

Dr. Bell testified at the hearing that the medical records from Kaiser show that Chagas has been in and out of treatment for more than 15 years and still has not gotten his condition entirely under control. AR 51. He explained that the records show that doctors tried various medications but Chagas "still has active symptoms that recur in spite of being on antidepressants, mood stabilizers, and anti-anxiety medication. He continues to have difficulty." AR 52. Dr. Bell opined that based on the records noting worthlessness, sleep disturbance, appetite disturbance, suicidal thoughts, depressed mood, mania, not needing any sleep, racing thoughts, increased energy, pressured speech, flight of ideas, and distractibility, Chagas had marked limitation in concentration. AR 48-50. Dr. Bell also opined that Chagas had moderate impairment in adapting or managing himself because he was somewhat dependent on his mother, lived at home, and had not held a job for any period of time. AR 50. Based on Chagas starting treatment for depression at 15 years old, medical records from 2007 and later, and a prescription for Depakote to treat bipolar disorder starting in 2005, Dr. Bell found it reasonable to infer the severity of Chagas' impairment in November of 2004. AR 54-59.

11

The AC found Dr. Bell's opinion unsupported because he drew an inference about the severity Chagas' bipolar disorder from treatment records two years later. AR 7. Further, the AC concluded that Dr. Bell's opinion is inconsistent with evidence that Chagas did not seek treatment for the two-year period after turning 22 years old. AR 7. Chagas contends that the AC erred by improperly rejecting Dr. Bell's medical opinion because SSR 18-1p contemplates using a medical expert to infer onset prior to the date of the earliest recorded medical examination and the AC did not consider the numerous reasons why Chagas did not have office visits between May 2005 and April 2007. ECF 18 at 19-21.

The Court finds that the AC erred in the evaluation of Dr. Bell's assessment of Chagas' limitations. The AC does not provide substantial evidence to support its supportability and consistency conclusions. *See Biestek*, 587 U.S. at 103 (defining "substantial evidence" as evidence that "a reasonable mind might accept as adequate to support a conclusion") (citation omitted). The AC's conclusion that Dr. Bell's opinion is unsupported because it relies on records from two years later is belied by Dr. Bell's testimony. Dr. Bell explains that his inference about the severity of Chagas' impairment in November of 2004 is also based in part on his prescription for Depakote in May 2005, only six months later, and Chagas being treated for depression as a teenager. AR 58-59. Thus, objective medical evidence supports Dr. Bell's medical opinion. *See Woods*, 32 F.4th at 791-92. In addition, there is no apparent inconsistency between Dr. Bell's opinion and the record merely because Chagas did not see a psychiatrist between May 2005 and April 2007. Dr. Bell assessed limitations in various areas based on over a decade of medical records. By focusing only on the two-year period, the AC failed to analyze the consistency of Dr. Bell's medical opinion "with the record as a whole." *See Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). In considering the evidence in its entirety, which it must, *Rounds*, 807 F.3d at 1002, the AC's error in failing to provide substantial evidence for his conclusions that Dr. Bell's opinions were inconsistent and unsupported warrants remand.

### 2. Dr. Levy

Dr. Levy was Chagas' attending psychiatrist in 2010 and 2011. AR 343, 373, 484. In October of 2011, he wrote that Chagas was diagnosed with bipolar disorder over a decade earlier

1    and had since been treated regularly at the clinic.  AR 484.  Dr. Bell explained that it has been
2    "difficult to stabilize [Chagas] on meds because of the severity of his disorder and a spate of side
3    effects."  AR 484.  He added that despite being on 200 mg of Lamictal daily, which was
4    "somewhat helpful," he was still unable to concentrate.  AR 484.  Finally, Dr. Levy opined that
5    "[b]ecause of the severity of [Chagas'] mood disorder, it is highly unlikely that he will ever be
6    able to join the work force."  AR 484.

7            The AC concluded that Dr. Levy's opinion was "neither valuable nor persuasive" because
8    a statement about the claimant's ability to work "is an issue reserved for the Commissioner."  AR
9    7 (citing 20 C.F.R. § 404.1520b(c)).  Chagas does not contest the AC's conclusion about Dr.
10   Levy's opinion regarding whether Chagas was able to work.  Chagas argues that the AC erred in
11   finding Dr. Levy's opinion unpersuasive because the AC failed to explain why the other aspects of
12   his opinion were unsupported or inconsistent – that Chagas' disorder is difficult to control with
13   medications, the severity of the disorder, and that despite medication, Chagas is still unable to
14   concentrate.  ECF 18 at 22.  The Commissioner responds that Dr. Levy's remaining statements
15   were unpersuasive because he makes "general, non-specific references to the severity of Plaintiff's
16   disorder" and statements made in 2011 are not probative of Chagas' functioning in November
17   2004.  ECF 24 at 15.

18           The conclusion that an individual is unable to work is "reserved to the Commissioner."  20
19   C.F.R. § 404.1520b(3)(i).  Accordingly, the AC did not err in concluding that Dr. Levy's
20   statement about Chagas' ability to work was not valuable or persuasive.  However, the Court
21   agrees with Chagas that it was legal error for the AC to not articulate why the remaining
22   statements were or were not persuasive.  The AC cannot reject a doctor's opinion as unsupported
23   or inconsistent without providing an explanation supported by substantial evidence.  The agency
24   must "articulate . . . how persuasive" it finds "all of the medical opinions" from each doctor or
25   other source, 20 C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability and
26   consistency factors" in reaching these findings, *id.* § 404.1520c(b)(2).  Because the AC failed to
27   articulate any such reasoning, it erred in rejecting Dr. Levy's opinion as unpersuasive and
28   invaluable.  Further, the Court may not substitute its own judgment for that of the AC.  *Ahearn v.*

13

1    *Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021).  It therefore declines the Commissioner's invitation to

2    speculate as to why the AC found Dr. Levy's remaining opinions unpersuasive.  *See Brown-*

3    *Hunter*, 806 F.3d at 492 (holding that the Court is "constrained to review the reasons the ALJ

4    asserts") (citation omitted).  The Court therefore remands for proper consideration of Dr. Levy's

5    medical opinion.

6             **C.**     **The AC Erred in Finding No Severe Impairment.**

7    Finally, Chagas challenges the AC's finding at the second step of the sequential evaluation

8    regarding the severity of his impairments.  Under the second step, an impairment is "not severe" if

9    it does not "significantly limit" the ability to conduct "basic work activities."  20

10   C.F.R. § 404.1522(a).  In practice, the second step of the five-step analysis "is merely a threshold

11   determination meant to screen out weak claims."  *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir.

12   2017); *see also Smolen*, 80 F.3d at 1290 (holding that "the step-two inquiry is a de minimis

13   screening device to dispose of groundless claims").  Therefore, a conclusion that a claimant does

14   not suffer from a medically severe impairment must be "clearly established by medical evidence."

15   *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (citation omitted).

16   Here, the AC concluded that Chagas suffered from bipolar disorder prior to November 20,

17   2004.  AR 6.  However, it found Chagas' impairment to be non-severe because of the gap in

18   treatment between May 2005 and April 2007.  AR 6.  The medical records do not clearly establish

19   that Chagas' impairment was not severe.  *See Webb*, 433 F.3d at 687.

20   Chagas did not seek in-office treatment from April 2005 to May 2007.  AR 382.  However,

21   during that time Dr. Russell continued to prescribe him Depakote – a drug used to treat bipolar

22   disorder.  AR 310-11, 321, 336, 382-384, 478.  When Dr. Russell treated Chagas on April 23,

23   2007, he noted that although Chagas had a "past history of settling down with [a] low dose of

24   Depakote" his "meds were not helping," he was having scattered thinking, and he believed "he has

25   been misdiagnosed."  AR 382.  Dr. Russell also noted that Chagas "does not follow up very well."

26   AR 382.  He prescribed Chagas with a different mood stabilizer, Lamotrigine, as well as an

27   antipsychotic, Abilify.  AR 310-11, 343, 338-39.

28   Medical treatment notes show that Chagas suffered from a slate of symptoms such as

chronic focus and memory issues, forgetting to eat, not being able to sleep, mania, and chronic depression. AR 312, 315, 320-21, 325-26, 328, 343. Dr. Levy wrote that in the decade since Chagas had been diagnosed with bipolar disorder, it "has been difficult to stabilize [Chagas] on meds because of the severity of his disorder and a spate of side effects." AR 484; *see also* AR 330. Indeed, Chagas' psychiatrists repeatedly attempted to adjust the dosages of the various medications they prescribed him; numerous medical treatment notes indicate the side effects he suffered from these various medications, including being unable to sleep, eat, or attend school, and feeling like he was "losing his mind." *See* AR 315, 338-39, 343. Treatment notes also describe Chagas as "mildly manic due to stress." AR 330.

In concluding that Chagas' bipolar disorder was not severe, the AC determined that the gap in treatment between May 2005 and April 2007 "appears to establish that the claimant's bipolar disorder was not so severe as to require any ongoing treatment." AR 6. The AC therefore concluded that the medical records did not establish any limitations in Chagas' ability to understand, remember or apply information, interact with others, concentrate, persist or maintain pace, and adapt or manage himself prior to November 20, 2004. AR 6.

The Court finds the AC's conclusion unsupported by substantial evidence. The AC's determination does not appear to take into account Chagas' documented inability to concentrate, sleep, attend school, or work; his symptoms such as mania, anxiety, depression, and forgetfulness; and his inability to be stabilized on medication. Indeed, even where the "medical record paints an incomplete picture of [the claimant's] overall health," it need only evidence "problems sufficient to pass the de minimis threshold of step two." *Webb*, 433 F.3d at 687 (finding that the AC erred in finding that claimant lacked a medically severe impairment when medical evidence demonstrated that he suffered from back, knee, and hip pain, hypertension, visual disturbances, diverticulitis, lack of sleep, difficulty performing tasks, and a lack of employment).

Moreover, in concluding that there was insufficient evidence of the severity of Chagas' impairment prior to November 20, 2004, the AC failed to fully develop the record. "In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Smolen*, 80 F.3d at 1288 (quoting *Brown v. Heckler*, 713

F.3d 441, 442 (9th Cir. 1983)).  This duty arises when the evidence is ambiguous or inadequate, and exists even when the claimant is represented by counsel.  *Id.*; *see Webb*, 433 F.3d at 687 (the "duty to supplement a claimant's record is triggered by ambiguous evidence [or] the [AC's] own finding that the record is inadequate . . . [.]").  The AC's duty to develop the record fully is "also heightened where the claimant may be mentally ill and thus unable to protect [his] own interests." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).  This duty may be discharged in several ways, including "subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record."  *Id.*; *see also* 20 CFR § 404.1520b(b)(2) (where there is insufficient evidence to determine disability, the commissioner may recontact medical sources, request additional existing evidence, ask the claimant to undergo a consultive examination, or ask the claimant or others for more information).

Here, the minimal medical evidence of Chagas' condition between 2005 and 2007 triggered the AC's duty to develop the record.  *See Webb*, 433 F.3d at 687.  The AC itself concluded that there was "insufficient objective evidence" to infer the severity of Chagas' impairment prior to November 20, 2004.  AR 6.  Thus, the AC's duty to "conduct an appropriate inquiry" was also triggered by the AC's "own finding that the record is inadequate" to properly evaluate the evidence.  *See Tonapetyan*, 242 F.3d at 1150 (citations omitted).  However, the AC did not question Dr. Bell further, did not submit questions to his treating psychiatrists, and refused to let Chagas or his mother testify about the severity of his medically determined disability, despite noting that statements from treating physicians indicate a history of bipolar disorder and treatment beginning in 1997 but that electronic records only go back to 2006.  AR 6.[8]

Therefore, the AC erred in failing to adequately develop the record, and the AC's

---

[8] The AC stated that it provided Chagas with an opportunity to submit additional evidence prior to its ruling but Chagas did not submit additional evidence.  AR 9.  However, the AC did not specifically request that Chagas submit further information or indicate that it found certain evidence to be insufficient.  *See Tonapetyan*, 242 F.3d at 1150.  Indeed, the AC's final determination indicated that "further testimony from the claimant and his mother about treatment . . . would not be useful in assessing the severity and limiting effects, if any, of the claimant's impairments . . .[.]" AR 9.

16

conclusion that Chagas' medical impairment was not severe was not supported by substantial evidence.

### E. Whether the Error Was Harmless

If the ALJ erroneously determines that an alleged impairment is not "severe" at step two, the reviewing court must determine whether the error was harmless. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Any failure to classify an impairment as non-severe at step two is harmless if the ALJ or AC subsequently considered the limitations posed by the impairment at a later step in the inquiry. *See McGuire v. Kijakazi*, 2021 WL 5861284, at *1 (9th Cir. Dec. 7, 2021) (finding that the ALJ's error at step two was harmless since the ALJ considered the non-severe impairment later in the inquiry). The Social Security Ruling for Titles II and XVI directs that:

> Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued.

SSR 85-28. In such circumstances, the adjudicator must evaluate the claimant's "ability to do past work, or to do other work based on the consideration of age, education, and prior work experience." *Id.*

Here, the AC failed to evaluate Chagas' ability to do past or other work or to continue in the sequential evaluation process. Therefore, the AC's legal error was not harmless, and remand is warranted.

### F. Remedy

The Social Security Act permits the district court to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014). "[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke*, 379 F.3d at 595 (citations omitted). However, under the credit-as-true rule, the Court may order an immediate award of benefits if three conditions are met: (1) "the AC

17

1   failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or

2   medical opinion," (2) there are no "outstanding issues that must be resolved before a disability

3   determination can be made" and further administrative proceedings would serve no useful

4   purpose, and (3) when considering the record as a whole and crediting the improperly discounted

5   testimony as true, there is no doubt as to disability. *See Leon v. Berryhill*, 880 F.3d 1041, 1045

6   (9th Cir. 2017). Even if all three criteria are met, the decision to remand for an award of benefits

7   or remand for further proceedings is within the district court's discretion. *Id.*

8       Remand for further proceedings is proper here. While Chagas argues that the record is

9   fully developed, his own contentions in this appeal demonstrate otherwise. First, Chagas faults the

10  AC for not allowing him or his mother to testify. ECF 18 at 18. Second, Chagas speculated about

11  the reasons he did not seek treatment from 2005 to 2007. *Id.* at 21. Moreover, it is not clear that

12  the ALJ or AC would be required to find Chagas disabled, even if these issues were resolved in

13  Chagas' favor. For these reasons, remand for further proceedings, rather than an award for

14  immediate payment of benefits, is appropriate. *See Leon*, 880 F.3d at 1047-48 (remanding for

15  further proceedings where the claimant's testimony about fatigue was not fully developed and

16  there were serious doubts as to whether the claimant was in fact disabled); *see also Dominguez v.*

17  *Colvin*, 808 F.3d 403, 408-10 (9th Cir. 2015) (finding remand appropriate so the ALJ could

18  determine how alleged impairments affected the claimant's residual functional capacity and

19  resolve inconsistencies between physician's opinions and treatment notes); *Treichler v. Comm'r,*

20  *Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014) (remanding where the inconsistencies

21  between the claimant's testimony and the medical evidence in the record raised crucial questions

22  as to the extent of the claimant's impairments).

23  **IV. CONCLUSION**

24      For the reasons set forth above, the Court **GRANTS** Chagas' motion for summary

25  ///

26  ///

27  ///

28  ///

1  judgment, **DENIES** the Commissioner's cross-motion, and **REMANDS** this case for further

2  administrative proceedings consistent with this Order.

4  **IT IS SO ORDERED.**

5  Dated: September 26, 2024

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**